821 F.Supp.2d 1135 (2011)
In re: KATZ INTERACTIVE CALL PROCESSING PATENT LITIGATION.
This document relates to:
Ronald A. Katz Technology Licensing, L.P., Plaintiff,
v.
Comcast Corporation, et al., Defendants.
Nos. CV 07-ML-01816-RGK (FFMx), CV 07-06996-RGK (FFMx).
United States District Court, C.D. California.
September 29, 2011.

*1140 DECISION RULING ON THE PATIES' INDIVIDUAL SUMMARY JUDGMENT MOTIONS
R. GARY KLAUSNER, District Judge.

 TABLE OF CONTENTS
 I. INTRODUCTION ..............................................................................1141
 II. JUDICIAL STANDARD .........................................................................1142
III. GEICO'S MOTION FOR SUMMARY JUDGMENT .......................................................1142
 A. Invalidity Under 35 U.S.C. § 102 and § 103 ............................................1142
 1. Legal Standard  Anticipation ....................................................1143
 2. Legal Standard  Obviousness .....................................................1143
 3. Claim 60 of the '120 Patent in View of Student Registration and
 Moosemiller ....................................................................1143
 a. The Prior Art ................................................................1144
 b. Katz's Arguments .............................................................1145
 4. Claim 61 of the '120 Patent in View of Student Registration and
 Calabrese ......................................................................1145
 a. The Prior Art ................................................................1145
 b. Priority .....................................................................1146
 5. Claims 1, 4 and 5 of the '134 Patent in View of Riskin and
 Moosemiller ....................................................................1146

*1141
 a. The Prior Art ................................................................1147
 b. Katz's Argument ..............................................................1148
 6. Claims 15 and 16 of the '984 Patent in View of Debruyn ...........................1148
 7. Claims 1 and 2 of the '252 Patent in View of Barger ..............................1148
 8. Claims 32, 39 and 43 of the '863 Patent in View of VCT '87, Friedes
 and Student Registration .......................................................1149
 9. Claim 116 of the '863 Patent in View of Moosemiller and Riskin ...................1149
 10. Claims 68 and 76 of the '893 Patent in View of VCT '87 and Lotito ................1149
 11. Claim 38 of the '965 Patent ......................................................1150
 B. Invalidity  Indefiniteness .....................................................1150
 1. Legal Standard  Indefiniteness ..................................................1150
 2. Claims 1 and 2 of the '252 Patent and Claims 15 and 16 of the '984
 Patent .........................................................................1151
 a. 35 U.S.C. § 112 ¶ 2 ..........................................................1151
 b. 35 U.S.C. § 112 ¶ 6 ..........................................................1151
 c. Individually Cueing Means ....................................................1152
 3. Claim 116 of the '863 Patent .....................................................1153
 4. Claims 68 and 76 of the '893 Patent ..............................................1153
 C. Non-Infringement ......................................................................1154
 1. Legal Standard  Non-Infringement ................................................1154
 2. The GEICO Lienholder System ......................................................1154
 3. The Current System and the '120 Patent ...........................................1155
 4. The GEICO Legacy System and the '134 Patent ......................................1156
 IV. KATZ'S CROSS MOTION FOR SUMMARY JUDGMENT ..................................................1156
 A. Infringement ..........................................................................1157
 1. Receiving Identification Signals .................................................1157
 2. ANI Based Qualification ..........................................................1157
 B. Marking Defense Under 35 U.S.C. § 287(a) ..............................................1158
 C. Equitable Estoppel ....................................................................1159
 D. Inequitable Conduct ...................................................................1159
 E. Best Mode Defense .....................................................................1161
 V. SUMMARY ...................................................................................1162

I. INTRODUCTION
In approximately fifty different lawsuits, plaintiff Ronald A. Katz Technology Licensing, L.P. ("Katz") has alleged that various defendants infringe claims from its family of related interactive call processing patents. The Judicial Panel on Multidistrict Litigation consolidated these cases for pretrial proceedings and transferred the consolidated case to this Court (07-MD1816). This Court grouped the different cases based roughly on the date they were transferred. The current case was the last case from this multi-district litigation and was managed separately.
In managing this case, this Court ordered Katz to eventually limit the number of claims it was asserting against each defendant group to sixteen. The only remaining defendant group in this case is comprised of defendants GEICO Corporation, Government Employees Insurance Company, GEICO General Insurance Company, GEICO Indemnity Company, and GEICO Casualty Company (collectively "GEICO").
The sixteen claims Katz asserts against GEICO are: claims 60 and 61 of U.S. Patent No. 5,974,120 entitled "Telephone Interface Call Processing System With Call Selectivity" ("the '120 patent"), claims 1, 4 and 5 of U.S. Patent No. 6,349,134 entitled "Telephonic-Interface Statistical Analysis System" ("the '134 patent"), claims 1 and 2 of U.S. Patent No. 5,251,252 entitled "Telephone Interface Call Processing *1142 System With Call Selectivity" ("the '252 patent"), claims 32, 39, 43 and 116 of U.S. Patent No. 5,684,863 entitled "Telephonic-Interface Statistical Analysis System" ("the '863 patent"), claims 68 and 76 of U.S. Patent No. 5,917,893 entitled "Multiple Format Telephonic Interface Control System" ("the '893 patent"), claim 38 of U.S. Patent No. 6,335,965 entitled "Voice-Data Telephonic Interface Control System" ("the '965 patent"), and claims 15 and 16 of U.S. Patent No. 5,128,984 entitled "Telephone Interface Call Processing System With Call Selectivity" ("the '984 patent"). Both GEICO and Katz have moved for summary judgment.
GEICO's motion for summary judgment covers three sets of issues. First, GEICO asks the court to find all the asserted claims invalid as anticipated and/or obvious under 35 U.S.C. § 102/103. Second, GECO asks the court to find claims 1 and 2 of the '252 patent, claims 15 and 16 of the '984 patent, claim 116 of the '863 patent, and claims 68 and 76 of the '893 patent invalid as indefinite under 35 U.S.C. § 112. Third, GEICO moves for summary judgment of non-infringement with respect to all the asserted claims.
Katz moves for summary judgment on infringement and partial summary judgment on GEICO's affirmative defenses of marking, equitable estoppel, inequitable conduct and best mode invalidity.

II. JUDICIAL STANDARD
Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also Karlin Tech., Inc. v. Surgical Dynamics, Inc., 177 F.3d 968, 970 (Fed.Cir.1999). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. A party opposing a properly supported motion for summary judgment "`may not rest upon the mere allegations or denials of his pleading, but... must set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). "If the evidence [opposing summary judgment] is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-250, 106 S.Ct. 2505 (citations omitted).
Even where the movant does not seek judgment as to the whole action, "the court should, to the extent practicable, determine what material facts are not genuinely at issue." Fed.R.Civ.P. 56(d)(1). "It should then issue an order specifying what facts  including items of damages or other relief  are not genuinely at issue." Id. Thus, "judgment may be rendered on liability alone ...." Fed.R.Civ.P. 56(d)(2).

III. GEICO'S MOTION FOR SUMMARY JUDGMENT

A. Invalidity Under 35 U.S.C. § 102 and § 103
GEICO asks the Court to rule that the asserted claims are either invalid as anticipated or obvious in view of the following items of prior art.

 Patent:Claim Prior Art
'120:60 Student Registration &
 Moosemiller
'120:61 Student Registration &
 Calabrese
'134: 1 4 and 5 Riskin & Moosemiller
'252: 1 and 2 Barger
'863:32, 39 and 43 VCT '87, Friedes and Student
 Registration

*1143
'863:116 Riskin & Moosemiller
'893:68 and 76 VCT '87 & Lotito
'965:38 Szlam & Yoshizawa; and/or
 Barger & Yoshizawa
'984:15 and 16 DeBruyn

1. Legal Standard  Anticipation
"Anticipation requires a showing that each element of the claim at issue, properly construed, is found in a single prior art reference." Zenith Electronics Corp. v. PDI Comm. Systems, Inc., 522 F.3d 1348, 1363 (Fed.Cir.2008). If an element is not expressly disclosed in a prior art reference, the reference still anticipates a subsequent claim if a person of ordinary skill in the art[1] would recognize that the missing element is necessarily present in the reference. PharmaStem Therapeutics, Inc. v. ViaCell, Inc., 491 F.3d 1342, 1371-1372 (Fed.Cir.2007) (citations omitted).
Although anticipation under 35 U.S.C. § 102 is a question of fact, it may be decided on summary judgment if the record reveals no genuine dispute of material fact. Golden Bridge Technology, Inc. v. Nokia, Inc., 527 F.3d 1318, 1321 (Fed. Cir.2008).

2. Legal Standard  Obviousness
A patent is presumed valid, and the defendants have the burden of proving invalidity by clear and convincing evidence. See 35 U.S.C. § 282; Iron Grip Barbell Co. v. USA Sports, Inc., 392 F.3d 1317, 1320 (Fed.Cir.2004). If the claimed invention is not disclosed in a single prior art reference, a patent may still be invalid as obvious under § 103. In Graham v. John Deere, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), the Supreme Court set forth the test for obviousness:
Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. Id., at 17-18, 86 S.Ct. 684.
This test is a question of law based on underlying factual inquiries.
See, e.g., Daiichi Sankyo Co. v. Apotex, Inc., 501 F.3d 1254, 1256 (Fed.Cir.2007).

3. Claim 60 of the '120 Patent in View of Student Registration and Moosemiller
This Court previously ruled on the Group B defendants' invalidity summary judgment in its August 4, 2008 Order Granting in Part and Denying in Part Defendants' Joint Summary Judgment of Invalidity Under Sections 102 and 103 ("Group B §§ 102/103 Decision"). The Group B §§ 102/103 Order found that claim 57 of the '120 patent was invalid as obvious in view of the combination of "Automated Student Registration Using Touch-Tone Telephone/Voice Response, An Application Note" of Periphonics Corporation, dated April 29, 1986 ("Student Registration"), and "AT & T's CONVESANT I Voice System" by John P. Moosemiller, dated March/April 1986, in Speech Technology ("Moosemiller"). Subsequently, the Court found that claims 56, *1144 62 and 63 of the '120 patent were also invalid as obvious in light of Student Registration and Moosemiller. (January 29, 2010 Order Granting in Part and Denying in Part Defendants' Joint Summary Judgment of Invalidity Under Sections 102 and 103 ("Group C §§ 102/103 Decision")).
The current motion for summary judgment argues that claim 60 of the '120 patent is also invalid in view of the same combination. GEICO argues that Student Registration discloses the additional limitations found in this claim. Therefore, GECO asks the Court to find that claim 60 is obvious.[2]
Claim 60 (together with independent claim 56) recites the following:
56. A process for interfacing, through a telephone-communication facility, (1) callers who are at a multitude of remote terminals for voice-digital communication with (2) a system for prompting the callers with caller cues, said process comprising the steps of:
establishing telephone communications between the callers and the system, the system having a receiving unit for receiving digital signals including dialednumber identification signals provided automatically from the telephone-communication facility;
utilizing the dialed-number identification signals to identify one from a plurality of numbers dialed by the callers;
also receiving at the receiving unit identification signals relating to the callers; testing said identification signals relating to the callers to determine whether to qualify the callers for access to at least a portion of operations of the system;
utilizing, for qualified callers, the identification signals relating to the callers, to avoid prompting certain callers with a certain previously provided cue or cues; and
providing to the qualified callers at least one other caller cue.
60. A process according to claim 56, wherein during the testing step, the process further tests the identification signals against a record of previous use.

a. The Prior Art
Student Registration discloses a call processing system using a voice response unit (VRU) to interact with callers to assist students in navigating through class registration and related applications. A student may be required to pre-register and obtain a PIN prior to dialing into the system. Alternatively, the student's birth date may be used as the PIN. After a caller has gained access to the system, he or she may then select and register for courses or be added to a waitlist. If the caller encounters difficulty during the call, the call can be transferred to an operator. The caller can elect to have the call transferred to an operator, or the system may initiate the transfer.
Moosemiller discloses the Conversant I system, which is a platform for support of a wide range of applications using voice response technology. The system allows applications to use the public telephone network for database access. Using this system, customers can use rotary or touchtone phones as terminals to access a host computer and eliminate the need for remote computer terminals. The Conversant I system utilizes a voice response unit that is connected to incoming trunk channels to provide customers with voice prompts. In response to these prompts, a user of the Conversant I application can log in to the system with touch-tone signals. In addition, *1145 the Conversant I system can utilize Dialed Number Identification Service, or DNIS, to classify incoming calls for different applications. Each type of caller is then greeted with appropriate transaction prompts.

b. Katz's Arguments
In response, Katz raises three arguments to show why claim 60 is not obvious. First, Katz contends that Student Registration is not prior art. Although Katz did not raise this argument in the Group B cases, it did so in the Group C cases. This Court concluded:
... the defendants have satisfied the "public accessibility" requirement. Accordingly, this Court finds there is no factual dispute with respect to the priority date. Student Registration qualifies as prior art to ... the '120 patent.
(Order Granting in Part and Denying in Part Defendants' Joint Summary Judgment of Invalidity Under Sections 102 and 103 ("Group C §§ 102/103 Decision") at p. 8.) This Court sees no reason to change that ruling here.
Second, Katz argues that there is no motivation to combine Student Registration and Moosemiller. This Court rejected this argument in both the Group B and C §§ 102/103 Decisions. Again, Katz provides no reason to depart from those decisions now.
Third, Katz argues Student Registration does not disclose cue suppression. Again, this Court previously rejected that position in its prior summary judgment rulings. In fact, the Federal Circuit has affirmed this specific ruling in the Group B appeal. The Federal Circuit said that "Student Registration clearly discloses the `cue suppression' decision. In re Katz Interactive Call Processing Litigation, 639 F.3d 1303, 1323 (Fed.Cir.2011).
In sum, Katz's arguments have all been previously rejected. Accordingly, this Court GRANTS GEICO's motion for summary judgment as it relates to the validity of claim 60. This Court finds that claim 60 is invalid as obvious in light of a combination of Student Registration and Moosemiller.

4. Claim 61 of the '120 Patent in View of Student Registration and Calabrese
GEICO argues that claim 61 of the '120 patent is also invalid as obvious in view of Student Registration and "Advanced Function VRU Applications" by Thomas E. Calabrese dated September 1989 ("Calabrese"). Claim 61 also depends from invalidated claim 56. Claim 61 recites the following:
61. A process according to claim 56, wherein the identification signals relating to the callers are calling number identification signals automatically provided by the telephone-communication facility.

a. The Prior Art
Calabrese discloses a call processing system using a composite VRU to interact with callers to assist customers in navigating through several insurance and related applications. Calabrese describes the desire to use automatic screen transfer, dialed number identification service (DNIS), automatic number identification (ANI), and other call processing technologies with voice response unit (VRU) applications. An incoming call can be connected to a VRU executing multiple applications (Annuities Inquiry, Health Claim Status, Flexible Benefits Enrollment, Pension Account Status) or to an operator. VRU applications are selected based on the telephone number dialed by the caller to access the system using DNIS. ANI is used to capture a caller's telephone number. The telephone number can be cross-referenced with a customer information database to *1146 determine the caller's identity and related information. This allows the system to avoid prompting the caller for account information. If the calling number is not on file, the caller may be transferred to an operator for alternative processing.

b. Priority
In response to this combination, Katz raises three arguments. First, Katz argues that Calabrese does not qualify as prior art to claim 57. Second, Katz argues it is improper to combine elements from Student Registration and Calabrese. Third, Katz argues that Student Registration does not disclose cue suppression.
Katz relies on an earlier ruling from the Group B cases to raise a factual issue with respect to priority. This Court has previously found that there were factual issues with respect to both the priority date of claim 57 of the '120 patent and the date of the Calabrese reference. (Group B §§ 102/103 Decision at pp. 12-14). With respect to the priority date of the '120 patent, this Court found "that a reasonable jury could believe that the '739 patent [ancestor of the '120 patent] contains a description of cue suppression and that claim 57 [of the '120 patent] is entitled to the May 16, 1988 priority date." Id. at 14. However, since that time the United States Patent Office has been reexamining the '120 patent. It disagreed with our conclusion and said that:
The concept of "utilizing, for qualified callers, the identification signals that indicate the telephone numbers to avoid prompting certain callers with a certain previously provided cue or cues" first appeared in the patent U.S. 5,128,984 which matured to a patent from CIP application 07/425,779, filed 23 October 1989. Therefore, 23 October 1989 is the earliest priority date afforded claims 56, 62, 67, and 73 of the '120 patent.

(March 20, 2009 Office Action in Reexam attached as Ex. B at p. 11 (emphasis added).)
Thus, the Patent Office has rejected Katz's claim of an earlier May 16, 1989 priority date. Although this evidence suggests that a jury would find that Katz is entitled only to an October 23, 1989 priority date, there still remains a triable issue of fact. GEICO has submitted only an office action, which shows only what one examiner believes at one point in time. There is nothing in the record that shows any final decision from the Patent Office.
Accordingly, this Court once again finds that there are factual issues for a jury to decide regarding the priority date of claim 61. This Court DENIES defendants' motion for summary judgment as related to claim 61 and the Student Registration/Calabrese combination. Given this ruling, this Court does not need to determine whether it is proper to combine elements from Student Registration and Calabrese.[3]

5. Claims 1, 4 and 5 of the '134 Patent in View of Riskin and Moosemiller
GEICO argues that claims 1, 4 and 5 of the '134 patent are also invalid as obvious in view of U.S. Patent No. 4,757,267 entitled "Telephone System for Connecting a Customer to a Supplier of Goods" ("Riskin") combined with Moosemiller. Claims 1, 4 and 5 recite the following:
1. A controlled data system for use with a telephone communication facility including remote terminals for individual callers, wherein said remote terminals comprise a telephonic capability including *1147 voice communication structure, and digital input structure in the form of an array of alphanumeric buttons for providing data, and wherein said telephone communication facility includes the capability to automatically provide called number identification data signals (DNIS), said controlled data system comprising:
a plurality of interface units including voice generator capability coupled to said telephone communication facility and placed at spaced apart remote geographic locations for receiving calls from said individual callers at said remote terminals and for receiving said called number identification data signals (DNIS) automatically provided by the telephone communication facility;
a central processor coupled to said plurality of interface units including voice generator capability by communication lines of said telephone communication facility, and coupled through a coupled interface unit for: 1) controlling cues to said individual callers in accordance with any one of various operating formats, 2) accomplishing a selected one of said various operating formats identified by said called number identification data signals (DNIS), which relate to a telephone number dialed by said individual callers, 3) receiving at least certain identification data relating to said individual callers and testing the at least certain identification data to control access to at least certain operations of said selected format and utilizing the certain identification data to avoid prompting certain callers with a certain previously provided cue or cues and providing at least one other cue, and 4) also receiving other data provided by said individual callers in response to said one or more cues, at least certain other data provided by said individual caller via the digital input structure; and
a storage structure associated with said central processor or said coupled interface unit or both for storing data relating to said individual callers including at least certain of said other data, said central processor utilizing at least certain of said identification data to address stored data on said individual callers and updating at least certain stored data in said storage structure based on said identification data and at least certain of said other data.
4. A controlled data system according to claim 1, wherein a live operator at a live operator station can enter data for said individual callers.
5. A controlled data system according to claim 1, wherein at least certain of said stored data is utilized for subsequent processing. (emphasis added).

a. The Prior Art[4]
Riskin described an interactive telephone system that automatically connected a caller with a nearby dealer based on certain criteria including the calling and called numbers, which were received from the telephone network. The Riskin system associated the dialed number received from the telephone network with an advertisement and a set of call processing instructions. Particular dealers were then selected to receive the call, in part by cross-referencing the calling and called telephone numbers with a database file listing each dealer by their product or service, as well as the location of each dealer using a longitude and latitude reference. The Riskin system also determined whether the dealer was open before connecting the call. The Riskin system created call record journals that stored call statistics and billing information.

*1148 b. Katz's Arguments
In response, Katz raises three arguments. First, Katz argues that there is no motivation to combine Riskin and Moosemiller. Second, Katz says that the combination does not satisfy the specific type of cue suppression required by claims 1, 4 and 5 of the '134 patent. Finally, Katz argues that Riskin and Moosemiller fail to disclose the "central processor" and "storage structure" limitations. At the same time, Katz filed a motion to strike portions of GEICO's summary judgment papers arguing that GEICO was raising new arguments after the close of discovery. Among the many requests, Katz asked the Court to strike a portion of Dr. Prieve's supporting declaration that related to "storage structure" limitation.
On June 10, 2010, this Court granted in part Katz's motion ("Order Striking Portions of GEICO's Expert Declarations"). Among the portions stricken were ¶¶ 700 and 702 of the Prieve Declaration. Those paragraphs attempted to show why Riskin discloses the "storage structure associated with said central processor ..." limitation required by claims 1, 4 and 5. Without these passages, GEICO has no evidence suggesting that the limitation is disclosed. Accordingly, this Court DNIES defendants' motion for summary judgment as related to the validity of claims 1, 4 and 5 of the '134 patent in view of the Riskin/Moosemiller combination. Given this ruling, this Court does not need to determine whether it is proper to combine elements from Riskin and Moosemiller or whether the specific cue suppression limitation was disclosed.

6. Claims 15 and 16 of the '984 Patent in View of DeBruyn
GEICO argues that claims 15 and 16 of the '984 patent are anticipated by Canadian Patent No. 1,162,336 entitled "System for Entering and Processing Gambling Stakes" issued on February 14, 1984, and filed on January 8, 1981, with a priority date of January 10, 1980 ("DeBruyn").
DeBruyn discloses a Lotto game system that allows callers to enter their stakes over the telephone. Claims 15 and 16 of the '984 patent have several means plus function limitations governed by 35 U.S.C. § 112 ¶ 6. A means plus function limitation is interpreted to encompass: 1) the recited function, and 2) the structures disclosed in the specification that correspond to that function and their equivalents. Applied Med. Res. Corp. v. U.S. Surgical Corp., 448 F.3d 1324, 1332 (Fed. Cir.2006).
The expert report of GEICO's expert, Bart Prieve, failed to explain how the De-Bruyn reference disclosed the structures required by several means plus function limitations found in claims 15 and 16. Moreover, the Order Striking Portions of GEICO's Expert Declarations struck those parts of the Prieve Declaration that attempted to belatedly cure these omissions. Specifically, the order struck all or part of ¶¶ 205, 210, 213, 216-217 and 227-229 of the Prieve Declaration. Without these passages, GEICO has no evidence suggesting that several means plus function limitations are disclosed by DeBruyn. Accordingly, this Court DENIES defendants' motion for summary judgment as related to the validity of claims 15 and 16 of the '984 patent in view of DeBruyn.

7. Claims 1 and 2 of the '252 Patent in View of Barger
GEICO also argues that claims 1 and 2 of the '252 patent are anticipated by U.S. Patent No. 4,071,698 entitled "Telephone System for Audio Demonstration and Marketing of Goods and Services" issued on January 31, 1978, and filed on January 10, 1977 ("Barger").
*1149 Barger discloses a system for marketing merchandise or services capable of being demonstrated by telephone. Claims 1 and 2 of the '252 also have a number of means plus function limitations governed by 35 U.S.C. § 112 ¶ 6. Again, Prieve's expert report failed to explain how the Barger reference disclosed the structures required by several means plus function limitations found in claims 1 and 2 and the Order Striking Portions of GEICO's Expert Declarations prevented Prieve from curing these omissions. Specifically, the order struck all or part of ¶¶ 237-238, 242, 244, 247-248 and 251 of the Prieve Declaration. Without these passages, GEICO has no evidence suggesting that several means plus limitations are disclosed by Barger. Accordingly, this Court DENIES defendants' motion for summary judgment as relates to the validity of claims 1 and 2 of the '252 patent in view of Barger.

8. Claims 32, 39 and 43 of the '863 Patent in View of VCT '87, Friedes and Student Registration
GEICO argues that claims 32, 39 and 43 of the '863 patent are obvious in view of the document entitled "The Voice  VCT Quarterly Newsletter  Winter 1987" published in December 1987 ("VCT '87") combined with the document entitled "ISDN Opportunities for Large Business  800 Service Customers" by A. Friedes published in June, 1986 in IEEE  International Conference on Communications '86 ("Friedes") and Student Registration. Claims 32, 39 and 43 all depend from independent claim 27.
Claims 32, 39 and 43 of the '863 also have a number of means plus function limitations governed by 35 U.S.C. § 112 ¶ 6. Again, Prieve's expert report failed to explain how the combination of VCT '87, Friedes and Student Registration disclosed the structures required by several means plus function limitations found in claims 32, 39 and 43 and the Order Striking Portions of GEICO's Expert Declarations prevented Prieve from curing these omissions. Specifically, the order struck all or part of ¶¶ 268, 282-283, 286-287, 292-293, 300-301 and 306 of the Prieve Declaration. Without these passages, GEICO has no evidence suggesting that several means plus function limitations are disclosed by VCT '87, Friedes and Student Registration. Accordingly, this Court DNIES defendants' motion for summary judgment as related to the validity of claims 32, 39 and 43 of the '863 patent in view of VCT '87, Friedes and Student Registration.

9. Claim 116 of the '863 Patent in View of Moosemiller and Riskin
GEICO argues that claim 116 of the '863 patent is obvious in view of Moosemiller in combination with Riskin. Claim 116 of the '863 also has a number of means plus function limitations governed by 35 U.S.C. § 112 ¶ 6. Again, Prieve's expert report failed to explain how the combination of Moosemiller and Riskin disclosed the structures required by several means plus function limitations found in claim 116 and the Order Striking Portions of GEICO's Expert Declarations prevented Prieve from curing these omissions. Specifically, the order struck all or part of ¶¶ 357-358, 365 and 370-371 of the Prieve Declaration. Without these passages, GEICO has no evidence suggesting that several means plus function limitations are disclosed by Moosemiller and Riskin. Accordingly, this Court DENIES defendants' motion for summary judgment as related to the validity of claim 116 of the '863 patent in view of Moosemiller and Riskin.

10. Claims 68 and 76 of the '893 Patent in View of VCT '87 and Lotito
Defendants argue that independent claim 68 of the '893 patent and its dependent *1150 claim 76 are obvious in view of VCT '87 in combination with U.S. Patent No. 4,625,081 entitled "Automated Telephone Voice Service System," issued November 25, 1986, and filed on November 30, 1982 ("Lotito"). VCT '87 discloses a customer service application in which a caller can call into the system, identify himself using the touch-tone keys, and be transferred to a customer service representative along with a "data screen" containing the data already entered by the caller. (VCT 1987, p. 1.) Lotito relates to an automated voice service system. The system provides automatic recording and editing of voice messages as well as forwarding of recorded voice messages to other accounts and telephone numbers without operator assistance. Callers can also be connected with operators for assistance in executing systems commands.
Claims 68 and 76 of the '893 also have a number of means plus function limitations governed by 35 U.S.C. § 112 116. Again, Prieve's expert report failed to explain how the combination of VCT '87 and Lotito disclosed the structures required by several means plus function limitations found in claims 68 and 76 and the Order Striking Portions of GEICO's Expert Declarations prevented Prieve from curing these omissions. Specifically, the order struck all or part of ¶¶ 400-401, 410, 424, 431 and 437 of the Prieve Declaration. Without these passages, GEICO has no evidence suggesting that several means plus function limitations are disclosed by VCT '87 and Lotito. Accordingly, this Court DENIES defendants' motion for summary judgment as related to the validity of claims 68 and 76 of the '893 patent in view of VCT '87 and Lotito.

11. Claim 38 of the '965 Patent
Defendants argue that independent claim 38 of the '965 patent is obvious in view of the combination of U.S. Patent No. 4,797,911 entitled, "Customer Account Online Servicing System" ("Szlam") and "Voice Response System for Telephone Betting" by Yoshizawa in Hitachi Review ("Yoshizawa"). This Court has already found that claim 38 of the '965 patent is invalid in view of this very combination in the Group C cases. (See Group C §§ 102/103 Decision). More recently, the Federal Circuit agreed with at least part of this Court's ruling when it said that there was a motivation to combine Szlam and Yoshizawa with respect to various other claims from the '965 patent. In re Katz, 639 F.3d at 1321-22. This Court sees no reason to depart from its earlier decision.
Accordingly, this Court GRANTS GECO's motion for summary judgment as it relates to the validity of claim 38 of the '965 patent. This Court finds that claim 38 is invalid as obvious in light of a combination of Szlam and Yoshizawa.

B. Invalidity  Indefiniteness

1. Legal Standard  Indefiniteness
GEICO argues that several claims are invalid as indefinite under 35 U.S.C. § 112 ¶ 1, which states:
The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same ....
(emphasis added).
The written description requirement helps to ensure that the patent applicant actually invented the claimed subject matter. See Vas-Cath Inc. v. Mahurkar, 935 F.2d 1555, 1561 (Fed.Cir.1991) ("Adequate description of the invention guards against the inventor's overreaching by insisting that he recount his invention in *1151 such detail that his future claims can be determined to be encompassed within his original creation.")
Whether a patent complies with the written description requirement is a question of fact. Pandrol USA, LP v. Airboss Ry. Products, Inc., 424 F.3d 1161, 1164 (Fed.Cir.2005). Here, defendants have moved for summary judgment arguing that numerous claims are invalid because they fail to comply with the written description requirement. Summary judgment is appropriate only if no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Fed.R.Civ.P. 56(c). This Court must "view [] the evidence and any disputed factual issues in the light most favorable" to the plaintiff. Enzo Biochem Inc. v. Gen-Probe, Inc., 323 F.3d 956, 962 (Fed.Cir.2002) (citation omitted).

2. Claims 1 and 2 of the '252 Patent and Claims 15 and 16 of the '984 Patent
GEICO asks the Court to rule that claims 1 and 2 of the '252 patent and claims 15 and 16 of the '984 patent are indefinite under 35 U.S.C. § 112. Claims 1 and 2 of the '252 patent and claims 15 and 16 of the '984 patent all require a "cue means for receiving said caller cues to provide voice signals through said communication means to prompt responses from said currently active [callers/of said callers] in the form of digital data signals."
GEICO argues that these claims are indefinite because the specifications fail to disclose an algorithm, as required by WMS Gaming Inc. v. Int'l Game Tech., 184 F.3d 1339, 1349 (Fed.Cir.1999).

a. 35 U.S.C. § 112 ¶ 2
An indefiniteness defense is based on 35 U.S.C. § 112 ¶ 2, which states:
The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.
The statute is satisfied if a person skilled in the art would reasonably understand the claim when read in the context of the specification. Marley Mouldings Ltd. v. Mikron Industries Inc., 417 F.3d 1356, 1359 (Fed.Cir.2005). A claim is presumed valid. Therefore, it is only indefinite if it is "insolubly ambiguous, and no narrowing construction can be adopted." Microprocessor Enhancement Corp. v. Tex. Instruments, Inc., 520 F.3d 1367, 1374 (Fed.Cir.2008) (citations omitted). The issue of indefiniteness is a matter of law for the court to decide. Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n, 161 F.3d 696, 705 (Fed. Cir.1998).

b. 35 U.S.C. § 112 ¶ 6
The parties agree that the "means for receiving said caller cues to provide voice signals ..." limitation is a means plus function limitation governed by 35 U.S.C. § 112, ¶ 6. A means plus function limitation is interpreted to encompass: 1) the recited function, and 2) the structures disclosed in the specification that correspond to that function and their equivalents. Applied Med. Res. Corp. v. U.S. Surgical Corp., 448 F.3d 1324, 1332 (Fed.Cir.2006). When a means plus function limitation discloses a computer or microprocessor programmed to carry out an algorithm as the corresponding structure, "the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm." WMS Gaming Inc. v. Int'l Game Tech., 184 F.3d 1339, 1349 (Fed.Cir.1999). Disclosing only a general purpose computer as the structure for performing a claimed function amounts to pure functional claiming and does not satisfy 35 U.S.C. § 112 ¶ 6, thereby rendering *1152 the claim indefinite under 35 U.S.C. § 112 ¶ 2. Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech., 521 F.3d 1328, 1333 (Fed.Cir.2008); see Net MoneyIN, Inc. v. VeriSign, Inc., 545 F.3d 1359, 1367 (Fed.Cir.2008) ("a means-plus-function claim element for which the only disclosed structure is a general purpose computer is invalid if the specification fails to disclose an algorithm for performing the claimed function.")

c. Individually Cueing Means
The recited function of the limitation at issue is "receiving said caller cues to provide voice signals through said communication means to prompt responses from said currently active callers in the form of digital data signals." With respect to GEICO's indefiniteness argument, there are two primary disputes. First, although both parties agree that the interface processor 26 performs the recited function, GEICO characterizes the structure as a general purpose processor while Katz says that it is a special purpose processor. Second, the parties disagree on whether the '223 patent specification discloses algorithms to perform the recited function.
In an earlier related case, this Court held that the interface processor 26 is a general purpose processor for the purposes of the related '703 patent. (August 13, 2009, Order Ruling On AOL's Motion for Summary Judgment at p. 9.) Katz disagrees and repeats many of the same arguments it raised against AOL. Specifically, Katz's expert, Dr. Brody, characterizes the interface processor as a "special purpose device dedicated to providing an interface between the system and the telephone facility." (Rebuttal Brody § 112 Decl. at ¶ 66.) Katz also points to new testimony from GEICO's expert regarding the components of general purpose computer and argues that this testimony confirms that interface processor 26 does not have the characteristics of a general purpose processor. (Id. at 71, quoting Forys D Track Dep. at pp. 77-78.) Apparently, Katz is arguing that the interface processor cannot be a general purpose processor because it has a voice generator. Id. However, the Federal Circuit has never indicated that there is one set of characteristics that define a general purpose computer and this Court declines to do so now.
Despite the additional detail found in Dr. Brody's declaration, this Court is not persuaded to change its earlier ruling. For the reasons discussed in the AOL decision, the Court finds that interface processor 26 is a general purpose processor. (August 13, 2009, Order Ruling On AOL's Motion for Summary Judgment at p. 9.) However, by itself that does not mean that the rule in WMS Gaming applies.
In its decision on the Group B appeal, the Federal Circuit clarified when an algorithm is required for a means plus function limitation (whose corresponding structure is a general purpose processor). In re Katz Interactive Call Processing Patent Litigation, 639 F.3d 1303 (Fed.Cir.2011). The Court said that algorithms are not required when the recited function does not require a special purpose computer. Thus, for simple functions like "processing," "receiving," and "storing," the specification did not need to disclose an algorithm. Id. at 1315-16. However, when the recited function would need to be implemented by programming a general purpose computer to convert it into a special purpose computer, an algorithm is necessary. Id. Thus, the Federal Circuit found a claim was indefinite because the specification did not disclose an algorithm that performed the conditionally coupling an incoming call function. Id. at 1314-15. Here, the recited function is "receiving said caller cues to provide voice signals through said communication means to *1153 prompt responses from said currently active callers in the form of digital data signals." This is different from the recited function at issue in the AOL summary judgment motion. In that decision, the recited function related to cueing callers. Here, the recited function is simply receiving a form of data, namely cues. Since the Federal Circuit has found that the rule in WMS Gaming does not apply to the function of receiving, this Court DENIES GEICO's summary judgment motion as it relates to the issue of indefiniteness and claims 1 and 2 of the '252 patent and claims 15 and 16 of the '984 patent.

3. Claim 116 of the '863 Patent
GEICO also asks the Court to rule that claim 116 of the '863 patent is invalid as indefinite. Claim 116 of the '863 patent requires an "analysis structure for receiving and processing said caller data signals under control of said record testing structure." GEICO argues that the rule in WMS Gaming applies because the specification only discloses a general purpose computer as the corresponding structure. Since the '863 patent specification does not include any algorithms to perform the recited function, GEICO concludes that claim 116 is indefinite.
In the Group B cases, this Court previously found that claims 96, 98 and 99 of the '863 patent were invalid as indefinite for failing to include an algorithm. However, the Federal Circuit reversed this decision. As discussed above, the Court found that algorithms were not necessary for simple functions like "processing," "receiving," and "storing." Since a general purpose computer could perform those functions without any programming, the Federal Circuit concluded that no algorithm was necessary. In re Katz, 639 F.3d at 1315-16. Claim 116 of the '863 patent falls within that same category. The recited functions are simply receiving and processing caller data. Since these functions do not need to be implemented by programming a general purpose computer to convert it into a special purpose computer, an algorithm is unnecessary. Accordingly, this Court DENIES GEICO's summary judgment motion as it relates to the issue of indefiniteness and claim 116 of the '863 patent.

4. Claims 68 and 76 of the '893 Patent
GEICO also asks this Court to rule that claim 68 of the '893 patent and its dependent claim 76 are invalid as indefinite. Specifically, GEICO argues that the claims are indefinite under IPXL Holdings, L.L.C. v. Amazon.com, Inc., 430 F.3d 1377, 1383-84 (Fed.Cir.2005), because they claim both an apparatus and method of use.
Claim 68 covers a system with an "interface means for providing automated voice messages ... to certain of said individual callers, wherein said certain of said individual callers digitally enter data through said digital input means." Notably, claims 1, 2, and 83 of the '893 patent contain almost identical limitations. Relying on IPXL, this Court previously found that these related claims were indefinite. (June 19, 2008 § 112 Decision at pp. 54-55.) More recently, the Federal Circuit affirmed this ruling saying that "Katz's claims ... fall squarely within the rationale of IPXL and are indefinite." In re Katz, 639 F.3d at 1318-19. Claims 68 and 76 contain the same problematic language as the invalidated claims. Therefore, this Court GRANTS GEICO's summary judgment as it relates to claims 68 and 76 of the '893 patent and finds that they are invalid as indefinite.[5]

*1154 C. Non-Infringement
Relying on three different arguments, GEICO moves for summary judgment of non-infringement with respect to all the asserted claims. First, GEICO argues that its Lienholder system does not infringe any claims from the '863, '893 and '124 patents because AT & T and not GEICO is responsible for several accused features. Second, GEICO argues that its current system does not infringe claims 60 and 61 of the '120 patent because they do not suppress cues as required by the claims. Finally, GEICO argues that its Legacy System did not infringe claims 1, 4 and 5 of the '134 patent because it does not satisfy the cue suppression limitation.

1. Legal Standard  Non-Infringement
Under the Patent Act, 35 U.S.C. § 271, liability for patent infringement may be imposed on any person who without permission of the patentee, "makes, uses, offers to sell, or sells any patented invention [] within the United States or imports into the United States any patented invention during the term of the patent therefore." The rights granted to the patentee are defined by the patent's claims. Markman v. Westview Instruments, Inc., 517 U.S. 370, 373, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).
In determining whether an allegedly infringing device falls within the scope of the claims, a two-step process is used: first, the court must determine as a matter of law the meaning of the particular claim or claims at issue; and second, it must consider whether the accused product infringes one or more of the properly construed claims. Id. at 384, 116 S.Ct. 1384; Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 1344 (Fed.Cir.2002). The second inquiry is a question of fact, although summary judgment of infringement or non-infringement may nonetheless be appropriate when no genuine dispute of material fact exists. Irdeto Access, Inc. v. Echostar Satellite Corp., 383 F.3d 1295, 1299 (Fed.Cir.2004) (quoting Bai v. L & L Wings, Inc., 160 F.3d 1350, 1353 (Fed.Cir. 1998)).
The patentee bears the burden of proving infringement by a preponderance of the evidence. Laitram Corp. v. Rexnord, Inc., 939 F.2d 1533, 1535 (Fed. Cir.1991). This burden can be met by showing that the patent is infringed either literally or under the doctrine of equivalents. See Linear Tech. Corp. v. Impala Linear Corp., 379 F.3d 1311, 1318 (Fed. Cir.2004). To support a finding of literal infringement, the patentee must establish that "every limitation recited in the claim appears in the accused product, i.e., the properly construed claim reads on the accused product exactly." Jeneric/Pentron, Inc. v. Dillon Co., 205 F.3d 1377, 1382 (Fed.Cir.2000) (citing Amhil Enters. Ltd. v. Wawa, Inc., 81 F.3d 1554, 1562 (Fed.Cir. 1996)).

2. The GEICO Lienholder System
Katz has accused GEICO's Legacy system (which includes the lienholder format) of infringing various claims from the '863, '893 and '134 patents. There is no dispute that a third party, AT & T, provides significant parts of all the accused services. To be liable for direct infringement a defendant must practice each and every element of the claimed invention. See BMC Resources, Inc. v. Paymentech, L.P., 498 F.3d 1373, 1380 (Fed.Cir.2007). However, a party cannot avoid infringement "simply by contracting out steps of a patented process to another *1155 entity." Id. at 1381. The test the Federal Circuit has put forth is whether the party "directs or controls" the third party. Id.; see Muniauction, Inc. v. Thomson Corp. 532 F.3d 1318, 1329 (Fed.Cir.2008), ("where the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party, i.e., the 'mastermind.'" (citation omitted)).[6]
GEICO argues that the evidence shows that GEICO did not control or direct AT & T. In support of that position, GEICO offers a document entitled AT & T Voice-Tone GEICO DIRECT dated September 21, 2004 (referred to as 118477 and attached to the Gursahaney Declaration.) This document outlines an AT & T proposal to manage at least some of GEICO's automated telephone processing system. In addition, David Foy testified that some of the systems used to provide GEICO's lienholder services resided at AT & T facilities. Relying on this evidence, GEICO's expert witness, Mr. Gursahaney, explained that the operation of services described in the AT & T proposal and residing at AT & T "fall within the acts and systems" accused of infringing Katz's patents. (Gursahaney Declaration at ¶ 44.) GEICO then concludes that there is no infringement because it cannot be responsible for AT & T.
In response, Katz argues that there is evidence that GEICO exercises direction and control over AT & T. Specifically, Katz points to evidence that GEICO defined the scripts played to callers through the Lien-holder format. (See Cindy Partridge Dep. at pp. 35-36, 49-50 attached as Ex. J.) In addition, Katz points out that GEICO operated other parts of the entire Legacy System and that the AT & T IVR's were coupled to the GEICO-housed and maintained databases.
The claims at issue describe both systems and how those systems handle calls. Here, Katz has provided substantial evidence that GEICO exercised control over how the systems (owned in part by AT & T) handled calls. However, neither party has presented evidence showing the degree of control and direction GEICO exercised over those components that were operated and owned by AT & T. GEICO relies on AT & T's proposal, but that document does not show the contractual relationship that the parties presumably entered. It is quite possible that GEICO did not have direction or control with respect to those components. However, based on the current record, the Court cannot make that finding. Accordingly, this Court DNIES GEICO's motion for summary judgment on the issue of lack of direction or control.

3. The Current System and the '120 Patent
Katz accuses the Current System of infringing claims 60 and 61 of the '120 patent. GEICO argues that it does not infringe these claims because the Current System does not perform a step related to suppressing cues. Claims 60 and 61 both depend on independent claim 56.[7] Claim 56 relates to a process for interfacing callers at remote terminals with a system for prompting the callers. It includes the step *1156 of "utilizing, for qualified callers, the identification signals relating to the callers, to avoid prompting certain callers with a certain previously provided cue or cues."
Although the parties' characterization of the Current System differs, they do not actually disagree over the details of its operation. The Current System gives callers making a payment an option to pay by credit card. If a caller selects this option and has not previously used the system to pay by credit card, the caller receives the following cue: "Please say or enter in your Credit Card Number." On the other hand, if the caller has previously used the system to pay by credit card, on subsequent calls the caller receives the following cue: "Now, it looks like [you've] made a payment with us over the phone [before and] we have that information still on file. The last time we used your xxxxxxxx account which ended in xxxx. Do you want to use that account again?"
If the caller does not use the same account, the call flow proceeds to § 6.2.0 "GetEnrollmentInfoCC," and the cue "Please say or enter in your Credit Card Number" is played. However, if the repeat caller decides to use the same account again, the call flow proceeds to § 6.6.0 "PaymentByCreditCard2" and the cue "Now, let me take care of that payment" is played.
Based on the foregoing, Katz argues that for repeat callers the cue, "Please say or enter in your Credit Card Number," is avoided based on identification signals that indicate that the caller had previously paid by credit card. In contrast, GEICO argues that the caller's decision on whether to use the same credit card account determines which cue is played next, not any stored "identification signals."
In this instance, Katz has the better side of the argument. Katz correctly points out that the system initially suppresses the "Please say or enter in your Credit Card Number" cue based on identification signals related to the caller. Although this cue may eventually be played in response to later queries, there is nothing in the claim language that prevents the same cue from arising later. Accordingly, this Court DENIES GEICO's summary judgment as it relates to whether the Current System infringes claims 60 and 61 of the '120 patent.

4. The GEICO Legacy System and the '134 Patent
Katz accuses the GEICO Legacy System of infringing claims 1, 4 and 5 of the '134 patent. GEICO argues that it does not infringe these claims because the GEICO Legacy System does not "utiliz[e] the certain identification data to avoid prompting certain callers with a certain previously provided cue or cues...." as required by independent claim 1. However, GEICO only raised this argument after the close of discovery and the Order Striking Portions of GEICO's Expert Declarations struck those portions of GEICO's expert declaration that relate to this argument. Specifically, the order struck all or part of ¶¶ 85-87 and 437 of the Gursahaney Declaration. Without these passages, GEICO cannot meet its burden of proof on summary judgment. Accordingly, this Court DENIES GEICO's summary judgment as it relates to whether the GEICO Legacy System infringes claims 1, 4 and 5 of the '134 patent.

IV. KATZ'S CROSS MOTION FOR SUMMARY JUDGMENT
Katz moves for summary judgment that GEICO infringed claims 60 and 61 of the '120 patent, and asks this court for partial summary judgment in its favor against GEICO's affirmative defenses of marking, equitable estoppel, inequitable conduct and best mode invalidity.

*1157 A. Infringement
Katz seeks summary judgment of infringement with respect to claims 60 and 61 of the '120 patent. As discussed above both claims 60 and 61 depend on independent claim 56.[8] The briefs focus on three non-infringement arguments GEICO raised. First, GEICO says that its systems do not perform the step of "receiving at the receiving unit identification signals relating to the callers."[9] Second, GEICO argues that the Current System does not suppress cues as required by the claims. This Court has already rejected this argument in Section III(C)(3). Third, GEICO argues that the accused GEICO system does not test ANI signals to determine whether to qualify callers. Katz disagrees and argues that all three defenses fail as a matter of law.

1. Receiving Identification Signals
Both claims 60 and 61 require the step of "receiving at the receiving unit identification signals relating to the callers." Katz has identified the Rockwell Spectrum PBX/ACD as the accused receiving unit. Katz goes on to offer testimony from its expert that the Rockwell Spectrum PBX/ACD receives both ANI and DNIS. (Kelly Decl. at ¶¶ 32, 42.) In response, GEICO says that there is no evidence that the Rockwell Spectrum PBX/ ACD receives ANI and DNIS information. (GEICO Opp'n. to Summ. J. at p. 3).
This Court agrees with Katz. GEICO relies on a passage from its expert report that does not support its conclusion. Mr. Gursahaney's report merely says that the GEICO IVR systems receive ANI and DNIS from the CTI server, not the Rockwell PBX/ACD. (Gursahaney Report at ¶ 233 attached Ex 1. to Faltin Decl.) But the issue is whether the Rockwell PBX/ ACD receives any identification signals related to the callers, not where the signals originated. Indeed, another part of Mr. Gursahaney's report admits that "The ICM system to which Dr. Kelly refers is a CTI Server that provides ANI, DNIS, and routing information to the individual Rockwell ACD." (Gursahaney Report, supra at ¶ 111 (emphasis added).)
Accordingly, this Court finds no triable issue of fact on this issue; the Rockwell Spectrum PBX/ACD performs the step of "receiving at the receiving unit identification signals relating to the callers."

2. ANI Based Qualification
Both claims 60 and 61 require the step of "testing said identification signals relating to the callers to determine whether to qualify the callers for access to at least a portion of operations of the system." GEICO argues that the GEICO Current System does not perform this step.
In the Current System, the IVR tests ANI (i.e. the calling number) to determine whether policy information is available for that customer. If it cannot identify the callers using ANI, it asks the callers to supply their policy number. GEICO says that this shows that the Current System is merely testing ANI to determine whether Policy Information is available, not to qualify access. In contrast, Katz explains that a caller is "unable to access the portion of the call flow that permit direct payment enrollment absent the system's use of ANI or caller-entered identification data." (Katz Reply at p. 5.)
*1158 GEICO's argument suggests that there is no infringement so long as the caller can enter its own identification information to access a portion of the system (i.e. direct payment enrollment). Under this view, the ANI test is not used to qualify a caller to a portion of the system; it just provides a short-cut for receiving the caller's information. In contrast, Katz's argument assumes there is infringement if the system uses ANI to obtain the caller's information or if the caller entered its own identification data. However, Katz has failed to adequately explain how these facts satisfy the testing step. Accordingly, Katz has failed to satisfy its burden of proof on summary judgment and this Court DNIES Katz's summary judgment motion of infringement as it relates to claims 60 and 61 of the '120 patent.

B. Marking Defense Under 35 U.S.C. § 287(a)
In its answer, GEICO argued that Katz failed to comply with 35 U.S.C. § 287(a) and is therefore barred from recovering any pre-suit damages. Section 287(a) states:
Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or when from the character of the article, this cannot be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of a failure to so mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.
Thus, § 287(a) can prevent the recovery of past damages when a patentee has failed to mark its products or provide actual notice of its patent. Importantly, the marking statute applies to "Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them or importing any patented article into the United States." If a patentee does not fall within this category, the failure to mark or provide actual notice will not bar past damages.
Katz's motion for summary judgment asks this Court to find that § 287(a) does not apply as matter of law. Katz relies on two arguments in support of its request. First, Katz says that § 287(a) does not apply because Katz and its licensees do not make or sell patented articles. Second, Katz argues that § 287(a) does not apply because it asserted patents that contain only method claims, or patents for which Katz has only asserted method claims.
In response, GEICO points out that Katz has the burden to prove compliance with the marking statute. Specifically, GEICO argues that under DR Sys., Inc. v. Eastman Kodak Co., 2009 WL 2632685 (S.D.Cal. Aug. 24, 2009), Katz has to prove that absence of patented articles. In a previous ruling in the Fifth Third Bank case, this Court rejected that position relying on different authority. (May 14, 2010 Summary Judgment Decision at pp. 26-27). Although we recognize that Katz has the burden to prove compliance with § 287, we held that the defendants had the burden to prove that there were patented articles to mark. This is consistent with this district's precedent. See Unova Inc. v. Hewlett-Packard, No. CV 02-3772(ER), 2006 WL 5434534, at *1 (C.D.Cal. Feb. 16, 2006); see also Laitram Corp. v. Hewlett-Packard *1159 Co., Inc., 806 F.Supp. 1294, 1297 (E.D.La.1992) (denying a motion for partial summary judgment limiting a patentee's damages for failure to mark because the accused infringer did not "prove first that the [inventions] were a 'patented article' within the meaning of the law.") Although GEICO has pointed out that there is a split in authority, we chose to follow our own precedent. Under this standard, GEICO has failed to offer an evidence of "patented article" that Katz should have marked. By itself, this conclusion warrants a finding of summary judgment in favor of Katz.
However, Katz raises a second alternative argument that also justifies summary judgment on the marking issue. Katz argues that § 287 does not apply because it is only asserting method claims. In response, GEICO relies on Am. Med. Sys., Inc. v. Med. Eng'g Corp., 6 F.3d 1523 (Fed.Cir.1993) and argues that marking is required when the patent contains both apparatus and method claims. However, the Federal Circuit has rejected this very analysis.
In this case and Hanson [v. Alpine Valley Ski Area, Inc., 718 F.2d 1075, 1083 (Fed.Cir.1983)], the patentee only asserted method claims despite the fact that the patent contained both method and apparatus claims. In American Medical, in contrast, "both apparatus and method claims of the '765 patent were asserted." American Medical, 6 F.3d at 1523. Because Rexam asserted only the method claims of the '839 patent, the marking requirement of 35 U.S.C. § 287(a) does not apply.
See Crown Packaging Tech., Inc. v. Rexam Beverage Can Co., 559 F.3d 1308, 1316 (Fed.Cir.2009). Since Katz has only asserted method claims, Crown Packaging and Hanson control. Therefore, this Court GRANTS Katz's summary judgment motion and finds that Katz is not barred from recovering past damages by § 287(a).

C. Equitable Estoppel
GEICO pleaded the affirmative defense of equitable estoppel. Katz's summary judgment motion asked the Court to find that this defense did not apply as a matter of law. In response, GEICO said that it "no longer believes that sufficient record evidence supports that affirmative defense under current law, and hereby withdraws it." (GEICO's Opp'n to Summ. J. at p. 1) Accordingly, this Court GRANTS Katz's summary judgment motion and finds that the doctrine of equitable estoppel does not apply.

D. Inequitable Conduct
GEICO has also pleaded the affirmative defense of inequitable conduct. Specifically, GEICO has asserted that Katz committed inequitable conduct by failing to disclose five specific items during the prosecution of its patents. (Katz Summ. J. Mot. at p. 22.) "Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." Therasense Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1285 (Fed.Cir.2011) (en banc). In a case involving nondisclosure of information, "the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." Id. at 1290.
The standard for materiality is set forth in 37 C.F.R. § 1.56 ("Rule 56"), which was amended in 1992. Under both the current and earlier Rule 56, information is not material if it is cumulative of information already of record before the examiner. See, e.g., Technology Licensing Corp. v. Videotek, Inc., 545 F.3d 1316, 1337 (Fed.Cir.2008) ("Even under the `reasonable *1160 examiner' test, however, it has long been established that a reference is not material if it is cumulative to other references already before the examiner"); Honeywell Int'l Inc. v. Universal Avionics Sys. Corp., 488 F.3d, 982, 1000 (Fed.Cir. 2007) (applying "reasonable examiner standard in determining that information cumulative of other information already before the Patent Office is not material"); Scripps Clinic & Research Found. v. Genentech, Inc., 927 F.2d 1565, 1582 (Fed.Cir. 1991) ("A reference that is simply cumulative to other references does not meet the threshold of materiality that is predicate to a holding of inequitable conduct." (citation omitted)).
Katz argues that GEICO cannot show materiality because GEICO has failed to show that the five non-disclosed references are not cumulative of the many references Katz did disclose to the Patent Office. A similar issue arose when Katz moved for summary judgment in the Group C cases. In that decision, the Court granted Katz's motion for summary judgment of no inequitable conduct because the defendants "failed to show that they made any effort whatsoever to show that the undisclosed references were not cumulative of the disclosed references"  a requirement for establishing the materiality of any undisclosed prior art. (August 14, 2009 Order Granting Plaintiff's Motion for Partial Summary Judgment of No Inequitable Conduct at pp. 8-9) (hereafter, the "Group C Inequitable Conduct Decision") The decision explained one possible way to show that an undisclosed reference was not cumulative of the thousands of cited references.
Under the current rules, defendants are entitled to take discovery and request a plaintiff to identify which cited references are cumulative and explain the basis for such contentions. If the defendants had done so here, they could have had rebutted any allegations that the undisclosed references were cumulative, and satisfied their burden of proof with respect to materiality.
(Group C Inequitable Conduct Decision at p. 8.)
GEICO asserts that it has followed this procedure. GEICO did ask Katz for its contentions on cumulativeness and Katz answered in its Supplemental Response to Common Interrogatory No. 4 (attached as Ex. 7 to Kaminski Decl.)
GEICO argues that it has rebutted Katz's contentions and presented considerable evidence of non-cumulativeness. Specifically, GEICO points to its discovery responses and Dr. Prieve's Expert Report. However, GEICO's discovery responses are not admissible evidence and they do not create a triable issue of fact. Moreover, a review of Dr. Prieve's report shows that he says only:
I have reviewed RAKTL's November 24, 2009 Supplemental Response to Common Interrogatory No. 4. I note that only a handful of features of the withheld references are discussed in this Supplemental Response. I note that RAKTL does not rebut GEICO's contentions, set forth above, that the prior art of record does not render cumulative the withheld references with respect to the prima facia case of invalidity of various specific claims set forth in my previous expert reports and further established herein in Appendix G.
(Prieve Report at ¶ 2522, attached as Ex.36 to Faltin Decl.)
This passage merely concludes that Katz is wrong on the issue of cumulativeness, but it does not provide the basis for that conclusion. Prieve never explains what limitations found in the five undisclosed references are not found in the cited references discussed by Katz. Such unsupported conclusory statements are insufficient to defeat a motion for summary judgment. *1161 Accordingly, this Court GRANTS Katz's summary judgment motion, and finds that there is insufficient evidence to present the issue of inequitable conduct to the jury.

E. Best Mode Defense
The best mode requirement is found in § 112, ¶ 1 and requires that the patentee disclose the best way (or mode) practicing the claimed invention. The purpose of the best mode requirement is to prevent an inventor from obtaining patent protection while concealing the preferred embodiment of the claimed invention.
GEICO relies on seven different arguments to argue that all of the asserted claims are invalid for failure to comply with § 112's best mode requirement. First, GEICO argues that claims 68 and 76 of the '893 patent are invalid because the specifications failed to disclose receiving calls. Second, GEICO argues that claims 32, 39, 43 and 116 of the '893 patent, claims 68 and 76 of the '863 patent and claims 1, 4 and 5 of the '134 patent are invalid because the specifications failed to disclose using DNIS to select the format for a call. Third, GEICO argues that all the asserted claims are invalid because the specifications failed to disclose the ability to process a large number of calls. Fourth, GEICO argues that claim 38 of the '965 patent, claims 32, 39 and 43 of the '863 patent and claims 68 and 76 of the '893 patent are invalid because the specifications failed to disclose transferring calls from an IVR to an operator. Fifth, GECO argues that claim 61 of the '120 patent is invalid because the specification failed to disclose qualifying a caller based on ANI. Sixth, GEICO argues that claim 38 of the '965 patent is invalid because the specification failed to disclose generating an acknowledgement number. Finally, GEICO argues that claims 60 and 61 of the '120 patent, claims 1, 4 and 5 of the '134 patent and claims 1 and 2 of the '252 patent are invalid because the specifications failed to disclose the ability to suppress cues.
There is a two-part test to show a patent is invalid for failure to comply with the best mode requirement. The defendant must present clear and convincing evidence that: (1) the inventor subjectively contemplated a best mode of carrying out the invention, and (2) the patent objectively fails to disclose that best mode of carrying out the claimed invention in the specification. E.g., Young Dental Mfg. Co. v. Q3 Special Prods., Inc., 112 F.3d 1137, 1144 (Fed.Cir.1997). The first prong is wholly subjective and focuses on the inventor's state of mind. Northern Telecom Ltd. v. Samsung Elecs. Co., 215 F.3d 1281, 1286 (Fed.Cir.2000).
Katz's summary judgment argues that GEICO's best mode defenses fail for two reasons. First, Katz says that there is no evidence that Mr. Katz, the sole inventor, subjectively believed the commercial systems GEICO identifies were the best mode of carrying out the claimed invention. Second, Katz argues that there is no evidence that the specifications needed to disclose additional details to allow a person of ordinary skill in the art to carry out the best modes that GEICO has identified.
This Court first addresses the issue of the inventor's knowledge. Not surprisingly, Mr. Katz testified that he tried to include the best way of implementing his inventions in the patent applications. In response, GEICO merely points out that Mr. Katz knew that certain commercial implementations embodied some of the limitations found in the asserted claims. GEICO's evidence consists of inventor testimony, discovery responses and a declaration. None of this evidence suggests the undisclosed implementations were the best mode, or that Mr. Katz thought those implementations were better than what he disclosed in the patent specifications. Accordingly, *1162 this Court finds that GEICO has failed to present substantial evidence to show that Katz believed that these commercial implementations represented the best mode for carrying out the claimed inventions.
This Court also finds that GEICO failed to present substantial evidence on the second element of its best mode defense. GEICO must present evidencing showing that the specifications did not enable a person of ordinary skill in the art to practice the best mode or that the inventor has somehow concealed his preferred mode. Northern Telecom, 215 F.3d at 1286. Since GEICO does not suggest that Mr. Katz concealed his preferred mode, this Court merely assesses whether the specifications at issue were adequate. Here, GEICO has no evidence suggesting that the disclosures were inadequate to a person having ordinary skill in the art. For example, with respect to the failure to disclose receiving calls in multiple modes, GEICO's expert, Dr. Forys, simply says, "[a] person of ordinary skill of the art attempting to practice these claims would have benefited from the more complete disclosure that Mr. Katz could have provided based on his supposedly successful commercial implementations of this concept." (Fory's Expert Report at ¶ 428 attached as Ex. 48 to Faltin Decl.) Although a more detailed specification may be more helpful, this testimony does not show that the specification was so inadequate that it failed to disclose the best mode. Dr. Fory's testimony on the other claims is equally unhelpful. (See Forys at ¶ 435 (merely noting feature was "non-trivial"), ¶ 441 (discussing an unclaimed feature as "non-trivial"), ¶¶ 447, 450, 454, 457 (saying nothing about what a person having ordinary skill in the art would understand).) Based on the foregoing this Court finds no evidence that the specifications needed to disclose additional details to allow a person of ordinary skill in the art to carry out the best modes that GEICO has identified. Accordingly, this Court GRANTS Katz's motion for summary judgment as it relates to GEICO's best mode defenses.

V. SUMMARY

A. GEICO's Motion for Summary Judgment

1. Invalidity Under 35 U.S.C. § 102 and § 103

a. Claim 60 of the '120 Patent
This Court GRANTS GEICO's motion for summary judgment as it relates to the validity of claim 60. This Court finds that claim 60 of the '120 patent is invalid as obvious in light of a combination of Student Registration and Moosemiller.

b. Claim 61 of the '120 Patent
This Court finds that there are factual issues related to the priority date of claim 61. Accordingly, this Court DENIES defendants' motion for summary judgment as related to claim 61 and the Student Registration/Calabrese combination.

c. Claims Impacted By Striking Portions of Prieve Declaration
This Court's Order Striking Portions of GEICO's Expert Declarations struck new arguments from the Prieve declaration related to the invalidity argument of claims 1, 4 and 5 of the '134 patent, claims 15 and 16 of the '984 patent, claims 1 and 2 of the '252 patent, claims 32, 39, 43 and 116 of the '863 patent and claims 68 and 76 of the '893 patent. Without Prieve's declaration, GEICO has no evidence suggesting that the prior art discloses various limitations from these claims. Accordingly, this Court DENIES defendants' motion for summary judgment as relates to the validity of the above mentioned claims.

*1163 d. Claim 38 of the '965 Patent
This Court GRANTS GEICO's motion for summary judgment as it relates to the validity of claim 38. This Court finds that claim 38 of the '965 patent is invalid as obvious in light of a combination of Szlam and Yoshizawa.

2. Invalidity  Indefiniteness

a. Individually Cue Means
Since the recited function of the means plus function limitations at issue in claims 1 and 2 of the '252 patent and claims 15 and 16 of the '984 patent is simply receiving a form of data, this Court find that the means plus function limitations at issue do not require algorithms. Accordingly, this Court DENIES GEICO's summary judgment motion as it relates to the issue of indefiniteness, claims 1 and 2 of the '252 patent and claims 15 and 16 of the '984 patent.

b. Analysis Structure
Since the recited function of the means plus function limitation at issue in claim 116 of the '863 patent is simply receiving and processing caller data, this Court finds that the means plus function limitations at issue do not require algorithms. Accordingly, this Court DENIES GEICO's summary judgment motion as it relates to the issue of indefiniteness and claim 116 of the '863 patent.

c. Mixed System/Method Claims
Because claims 68 and 76 of the '893 patent contain limitations directed at both an apparatus and method of use, this Court GRANTS GEICO's summary judgment as it relates to claims 68 and 76 of the '893 patent and finds that they are invalid as indefinite.

3. Non-Infringement

a. The GEICO Lienholder System
This Court finds that there are factual issues related to whether GEICO directed or controlled AT & T. Accordingly, this Court DENIES GEICO's motion for summary judgment of non-infringement as it relates to the GEICO Lienholder System and the '863, '893 and '134 patents.

b. The Current System and the '120 Patent
This Court finds that the Current System performs the step of suppressing cues. Accordingly, this Court DENIES GECO's summary judgment as it relates to whether the Current System infringes claims 60 and 61 of the '120 patent.

c. The GEICO Legacy System and the '134 Patent
This Court's Order Striking Portions of GEICO's Expert Declarations struck evidence raised after expert discovery. This evidence asserted that GEICO's Legacy System did not perform the step of "utiliz[e] the certain identification data to avoid prompting certain callers with a certain previously provided cue or cues ..." as required by claims 1, 4 and 5 of the '134 patent. Without these passages, GEICO was unable to meet its burden of proof on summary judgment. Accordingly, this Court DENIES GEICO's summary judgment as it relates to whether the GEICO Legacy System infringes claims 1, 4 and 5 of the '134 patent.

B. Katz's Cross-Motion for Summary Judgment

1. Infringement
This Court finds that Katz has failed to satisfy its burden of proof and demonstrate how the accused systems satisfy the testing step of claims 60 and 61 of the '120 *1164 patent. Accordingly, this Court DENIES Katz's summary judgment motion of infringement as it relates to claims 60 and 61 of the '120 patent.

2. Marking Defense Under 35 U.S.C. § 287(a)
Since GEICO has failed to identify a patented article that Katz should have marked and because Katz has only asserted method claims, this Court finds that 35 U.S.C. § 287(a) does not apply. Accordingly, this Court GRANTS Katz's summary judgment motion and finds that Katz is not barred from recovering past damages by § 287(a).

3. Equitable Estoppel
Since GEICO did not contest this portion of Katz's motion, this Court GRANTS Katz's summary judgment motion and finds that the doctrine of equitable estoppel does not apply.

4. Inequitable Conduct
This Court finds that GEICO has failed to present substantial evidence that the five undisclosed references are not cumulative of already cited prior art. Accordingly, this Court GRANTS Katz's summary judgment motion, and finds that there is insufficient evidence to present the issue of inequitable conduct to the jury.

5. Best Mode Defense
This Court finds that GEICO has failed to present substantial evidence that Mr. Katz, the sole inventor, subjectively believed the commercial systems GEICO identifies were the best mode of carrying out the claimed invention. GEICO has also failed to present substantial evidence that the specifications needed to disclose additional details to allow a person of ordinary skill in the art to carry out the best modes that GEICO has identified. Accordingly, this Court GRANTS Katz's motion for summary judgment as it relates to GEICO's best mode defense.
IT IS SO ORDERED.
NOTES
[1] The parties have essentially the same view of the level of ordinary skill in the art of the patents. In short, they both suggest that such a person would have a B.S. in Electrical Engineering or other technical field and somewhere between three to seven years of experience or the equivalent (Brody 102/103 Decl. at ¶ 18, Prieve Decl. at ¶¶ 61-62.). For the purposes of this decision, the Court adopts these conclusions.
[2] Based on GEICO's Reply Brief, the Court understands that GEICO is NOT arguing that Katz is collaterally estopped from asserting claim 60.
[3] This Court has already found that Student Registration does disclose cue suppression for the reasons mentioned in connection with claim 60 of the '120 patent. However, that finding does not affect the ruling with respect to claim 61.
[4] Moosemiller is described above in connection with claim 60 of the '120 patent.
[5] GEICO also invoked the rule in WMS Gaming and argued that the claims are indefinite because the "means for processing" limitation is not supported by an algorithm. In view of this Court's finding of indefiniteness, this argument is moot.
[6] This Court is aware that the law of divided infringement remains unsettled. The entire Federal Circuit will take up the divided infringement issue in both Akamai Technologies, Inc. v. Limelight Networks, Inc., and McKesson Technologies Inc. v. Epic Systems Corp. The en banc orders issued on April 20, 2011 and May 26, 2011, respectively.
[7] The language of these claims is recited in Sections III(A)(3) and III(A)(4).
[8] The language of these claims is recited in Sections III.(A)(3) and III(A)(4).
[9] Initially, GEICO appeared to interpret the claims to require that the receiving unit perform all the steps of the claims. However, GEICO has not maintained that position in the current briefing. Accordingly, this Court does not address that issue.